UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

**KOHLER CO.,**
                      **Plaintiff,**

v.                                                                     Case No. 13-cv-1170

**OTTO R. KOPIETZKI and**
**PACIFIC POWER SOLUTIONS PTE., LTD.,**
                      **Defendants.**
_____

### DECISION AND ORDER

Plaintiff Kohler Co. sues a former executive, defendant Otto R. Kopietzki, and his subsequent employer, Pacific Power Solutions Pte., Ltd. ("PPS"),[1] alleging that defendants tortiously interfered with a contract between plaintiff and a distributor and that defendant Kopietzki breached the nondisclosure provision of his employment contract. Defendant Kopietzki now moves for summary judgment.

### I. Background

In 1988, Kopietzki began working for Kohler as vice president of its power systems division, which sells generators and related products. Kopietzki had previously worked with a Saudi Arabian distributor of generators, Sawary Trading and Contracting Co., Ltd., and in 1990, he brought Sawary to Kohler as an exclusive distributor of Kohler generators in Saudi Arabia. By 2012, Sawary was one of Kohler's largest generator distributors, bringing Kohler $28 million in sales.

Kopietzki received numerous promotions at Kohler, eventually becoming president of the division. In conjunction with his promotion, he signed a document called a "conflict of interest corporate policy statement" which acknowledged that he had a

---
[1] PPS has never appeared in this action.

legal obligation not to disclose confidential or trade secret information after leaving the company. Am. Compl. Ex. C (ECF No. 17-3). In 2005 and 2006, he also signed employment agreements which included nondisclosure provisions prohibiting him from disclosing "confidential information which would cause damage to Kohler if known to competitors." Am. Compl. Exs. A, B (ECF Nos. 17-1, 17-2).

Kopietzki retired from Kohler in May 2011, and in August 2011, he became a consultant with defendant PPS, a Singapore-based consulting company. Through PPS, he consulted for another generator manufacturer and Kohler's competitor, MTU Onsite Energy GmbH ("MTU"). In mid-2013, Kohler's Saudi Arabian distributor Sawary signed a distributorship agreement with MTU and terminated its agreement with Kohler. The parties dispute how big a role Kopietzki played in causing Sawary to make the change.

## II. Discussion

Summary judgment is required where there is not genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On summary judgment, I view the evidence in the light most favorable to the non-moving party and may grant the motion only if no reasonable jury could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### A. Breach of Contract Claim

Plaintiff claims that, when he worked with MTU to secure Sawary as its generator distributor in Saudi Arabia, Kopietzki breached the nondisclosure provision of his employment agreement by disclosing confidential information. Kopietzki argues that the nondisclosure provision is unenforceable. The parties agree that Wisconsin law applies.

2

Under Wisconsin law, restrictive covenants which include a specified territory during a specified time are enforceable as long as the restrictions are reasonably necessary to protect the employer. Wis. Stat. § 103.465. Nondisclosure agreements which seek to shield categories of information broader than just trade secrets are covered by this statute because "[t]his is the essence of a trade restraint." *Tatge v. Chambers & Owen, Inc.*, 219 Wis. 2d 99, 112 (1998). A covenant that contains no time limitation is unreasonable per se. *Friemuth v. Fiskars Brands, Inc.*, 681 F. Supp. 2d 985, 989 (W.D. Wis. 2010); *see also Gary Van Zeeland Talent, Inc. v. Sandas*, 84 Wis. 2d 202, 218 (1978); *Holsen v. Marshall & Ilsley Bank*, 52 Wis. 2d 281, 287 (1971); *Nalco Chem. Co. v. Hydro Techs., Inc.*, 984 F.2d 801, 803 (7th Cir. 1993); *Sysco Food Servs. of E. Wis., LLC v. Ziccarelli*, 445 F. Supp. 2d 1039, 1053 (E.D. Wis. 2006).

Wis. Stat. § 103.465 applies to the nondisclosure agreement at issue in the present case because the agreement seeks to protect more than just trade secrets[2] and because it seeks to shield such information from competitors, rendering it a restraint of trade. Further, the nondisclosure agreement is per se unreasonable because it does not

---

[2] Plaintiff asserts in its brief that "[m]ost if not all of the confidential information at issue here constitutes trade-secret information . . . [in which case] § 103.465 would not even apply." However, plaintiff develops no argument to support this assertion. *Butler v. Ill. Dep't of Transp.*, 533 F. Supp. 2d 821, 825 n.1 (N.D. Ill. 2008) ("Undeveloped, perfunctory arguments not supported by relevant legal authority are waived."). Further, the provision defines "confidential information" broadly and includes such things as marketing and advertising strategies, names of customers, price strategies, quantities sold, personnel skills, and compensation and organization charts. Am. Compl. Ex. B (ECF No. 17-2).It seems unlikely that these broad categories fit Wisconsin's statutory definition of trade secrets, *see* Wis. Stat. § 134.90(1)(c) (defining a trade secret as information "including a formula, pattern, compilation, program, device, method, technique, or process" which "derives independent economic value . . . from not being generally known to . . . other persons" and which "is the subject of efforts to maintain its secrecy"). For these reasons, I conclude that the nondisclosure agreement covered more than just trade secrets.

include a time limitation. The agreement forbids Kopietzki from using or disclosing confidential information "unless and until such confidential information shall become public knowledge, . . . or until other legal disclosure of such confidential information shall be made, or until Kohler shall consent." Am. Compl. Ex. B (ECF No. 17-2). Plaintiff argues that this language constitutes a time limitation, but I disagree. Saying the disclosure agreement applies until the information is no longer confidential is essentially saying that the agreement applies until it doesn't apply, which is not a meaningful time limitation. Further, even if this did somehow constitute a time limitation, it is not a reasonable one because it offers Kopietzki no way to reasonably determine when the nondisclosure obligation ends. *See H&R Block E. Enters., Inc. v. Swenson*, 307 Wis. 2d 390, 402 (Ct. App. 2007) (concluding that a purported time limitation was unreasonable because "[t]he effect of the . . . provision . . . makes the duration of the restraint not a fixed and definite time period but a time period that is contingent upon outcomes the employee cannot predict"). For these reasons, I conclude that plaintiff's nondisclosure agreement is unenforceable and that its breach of contract claim fails.

**B. Tortious Interference Claim**

Plaintiff also alleges that Kopietzki and PPS tortiously interfered with plaintiff's contract with Saudi distributor Sawary. The parties disagree on what law governs this claim. Kopietzki argues that Saudi Arabian law applies because Saudi Arabia has more significant contacts with the matters giving rise to the claim. Plaintiff argues that Wisconsin's contacts are more significant, and that, therefore, Wisconsin law applies. This dispute is significant because according to Kopietzki's expert in Saudi Arabian law, Saudi Arabian law does not recognize a claim for tortious interference with contract.

4

I have diversity jurisdiction over this matter, and I therefore apply the choice of law rules of Wisconsin. *Frederick v. Simmons Airlines, Inc.*, 144 F.3d 500, 503 (7th Cir. 1998). Under Wisconsin law, "the law of the forum should presumptively apply unless it becomes clear that nonforum contacts are of greater significance." *Drinkwater v. Am. Family Mut. Ins. Co.*, 290 Wis. 2d 642, 658 (2006) (quoting *State Farm Mut. Auto. Ins. Co. v. Gillette*, 251 Wis. 2d 561, 588 (2002)). This requires Wisconsin's connections with the facts of the claim to be "so obviously limited and minimal that application of that state's law constitutes officious intermeddling." *Beloit Liquidating Trust v. Grade*, 270 Wis. 2d 356, 374 (2004) (internal quotations and citation omitted). In determining which state has the more significant relationship, I consider, among other factors, the place where the injury occurred, the place where the conduct causing the injury occurred, the residence or nationality of the parties, and the place where the relationship between the parties is centered. Restatement (Second) of Conflict of Laws § 145(2) (1971). If it is not clear whether the forum or nonforum has more significant contacts, then I apply the following "choice-influencing" factors: (1) predictability of results, (2) maintenance of interstate and international order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interests, and (5) application of the better rule of law. *Drinkwater*, 290 Wis. 2d at 658.

Here, it is not clear that Saudi Arabian contacts related to the tortious interference claim are more significant than Wisconsin contacts. The alleged injury, namely the damages that plaintiff allegedly suffered when Sawary terminated its relationship with plaintiff, occurred in Wisconsin; plaintiff is headquartered in Wisconsin; and plaintiff's contractual relationship with Sawary was centered in Wisconsin. Nilles

5

Decl. Ex. X at 6 (ECF No. 105-20) (Kohler-Sawary distributorship agreement stating that the agreement shall be governed in accordance with Wisconsin law); Raats Decl. ¶ 15 (ECF No. 113) ("[Kohler] products were manufactured in Wisconsin and shipped directly to Sawary from Wisconsin . . . [because] Sawary had a particular strategy of selling equipment that was . . . built in the United States."). The fact that Sawary is located in Saudi Arabia and that a small portion of Kopietzki's allegedly tortious conduct occurred in Saudi Arabia is not enough to overcome the presumption that Wisconsin law applies.

The choice-influencing factors also weigh in favor of Wisconsin law. Applying Wisconsin law as opposed to Saudi Arabian law is a simpler judicial task. *Drinkwater*, 290 Wis. 2d at 662 ("[T]he judicial task is rarely simplified when lawyers and judges must apply themselves to foreign law.").[3] Further, applying Wisconsin law advances Wisconsin's governmental interests because plaintiff is headquartered here, the contractual relationship that Kopietzki allegedly interfered with was centered here, and Wisconsin has a strong interest in compensating its citizens for torts cognizable under Wisconsin law. *See id.* at 664–65. Thus, I will apply Wisconsin law.

To prevail on its tortious interference of contract claim, plaintiff must prove that (1) it had a contractual relationship with Sawary, (2) Kopietzki interfered with the relationship, (3) the interference was intentional, (4) a causal connection exists between the interference and plaintiff's damages, and (5) Kopietzki was not justified or privileged to interfere. *Duct-O-Wire Co. v. U.S. Crane, Inc.*, 31 F.3d 506, 509 (7th Cir. 1994).

---

[3] I disagree with Kopietzki that applying Saudi Arabian law would be simpler because he has submitted an affidavit from a Saudi Arabian legal expert who states that there is no tortious interference with contract claim under Saudi Arabian law. While I may accept factual assertions in affidavits as evidence, I would need to complete my own legal research and analysis regarding the legal question of whether Saudi Arabian law recognizes a tortious interference with contract claim.

6

Kopietzki argues that plaintiff's claim fails because he was privileged or justified to interfere. Privilege is a defense to a tortious interference claim, and the defendant bears the burden of proving that his interference was justified. *Select Creations, Inc. v. Paliafito Am., Inc.*, 911 F. Supp. 1130, 1159 (E.D. Wis. 1995). In particular, Kopietzki argues that he was privileged to interfere as a competitor,[4] an established privilege defense. Restatement (Second) of Torts § 768.[5] "[C]ompetition is not a tort." *Frandsen v. Jensen-Sundquist Agency, Inc.*, 802 F.2d 941, 947 (7th Cir. 1986). Where defendant does not induce a party to breach a contract, his interference with contractual relations is justified if (1) defendant and plaintiff are competitors, (2) defendant does not employ wrongful means to interfere, (3) defendant's action does not create an unlawful restraint of trade, and (4) defendant's purpose is at least in part to advance his interest in completing with plaintiff. Restatement (Second) of Torts § 768(1).

Plaintiff argues that Kopietzki cannot avail himself of the competition privilege defense because neither he nor his employer PPS, as consultants, were plaintiff's competitors. However, the Restatement defines "competition" broadly, stating that it refers to competition, either direct or indirect, "as sellers or buyers or in any other way, and regardless of the plane on which they complete." § 768, cmt. c. It is clear that Kopietzki's client MTU was plaintiff's direct competitor and that Kopietzki was working on MTU's behalf when he allegedly induced Sawary to contract with MTU instead of

---

[4] Kopietzki also appears to assert without developing an argument that he was privileged to interfere because he had a financial interest in Sawary's business, Reply Br. at 11 (ECF No. 120), also an accepted privilege defense, *see* Restatement (Second) of Torts § 769. However, aside from the fact that Kopietzki fails to develop an argument, the type of interest he had is not within the term "financial interest" as defined in the Restatement. § 769, cmt. c.

[5] Wisconsin has adopted the Restatement (Second) of Torts concerning tortious interference with contract. *Liebe v. City Fin. Co.*, 98 Wis. 2d 10, 14–15 (Ct. App. 1980).

7

plaintiff for its supply of generators. Thus, Kopietzki was at least indirectly competing with plaintiff.

Plaintiff also argues that Kopietzki cannot avail himself of the privilege defense because he induced Sawary to breach portions of its distributorship agreement with plaintiff. The competition privilege defense does not apply where a defendant induces a party to breach a contract because "an existing contract . . . involves established interests that are not subject to interference of the basis of competition alone." § 768 cmt. a; *Frandsen*, 802 F.2d at 948 (applying the competition privilege defense only "[i]n cases where no breach of contract results from the interference"). The distributorship agreement between plaintiff and Sawary entitled either party to terminate the contract at will with 90-days' notice. Nilles Decl. Ex. X at 5 (ECF No. 105-20). Thus, Sawary's act of terminating the contract, in and of itself, was not a breach. However, plaintiff alleges that Kopietzki also induced Sawary to enter into an agreement with MTU that took effect before Sawary gave plaintiff notice of termination and encouraged Sawary to order MTU products while the agreement between Sawary and plaintiff was still in effect in breach of Sawary's exclusivity provision, that Kopietzki told Sawary that the five-year non-compete provision of the contract was unenforceable thereby encouraging Sawary to breach it, and that Kopietzki encouraged Sawary to stop ordering products from plaintiff while the contract was in effect and thus to breach Sawary's agreement with plaintiff to maintain sufficient stock. *Id.* at 2–3.

Kopietzki responds that the only breach plaintiff has any evidence to support is a breach of the non-compete provision, and that he cannot be held liable for tortiously interfering with this provision because it is unenforceable. However, under Wisconsin

8

law, a third party cannot escape liability for tortiously interfering with an unenforceable provision of a contract where the parties, without such interference, were ready and willing to continue performance on that contract. *Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 106 (Ct. App. 1979) (quoting *Bitzke v. Folger*, 231 Wis. 513, 522–23 (1939)) ("Even though some part of the agreements may have been legally unenforceable, nevertheless, the malicious procurement of the termination thereof by an intermeddler, while the parties thereto were ready and willing to continue performance, would render him liable for damages caused thereby."). Here, there is a fact issue as to whether Sawary would have continued the relationship and would have followed the non-compete had Kopietzki not interfered. *See, e.g.*, Kasper Decl. Ex. 6 at 156 (ECF No. 115-8) (Kopietzki deposition testimony that Sawary had "a long and financially successful relationship with Kohler").

Further, even if the breach of the non-compete claim is not cognizable, plaintiff still alleges several other contractual breaches and asserts facts supporting an inference that Kopietzki induced those breaches. Plaintiff's distributorship agreement with Sawary was exclusive, required 90-days' notice of termination, and required Sawary to make best efforts to sell Kohler products and to maintain a reasonable level of inventory. Second Stipulation of Facts ¶¶ 4–5 (ECF No. 119). Plaintiff provides evidence that Sawary breached these provisions by failing to place a stock order with Kohler despite its inventory levels being very low, signing its agreement with MTU, marketing MTU generators to its customers, and placing stock orders with MTU before terminating its agreement with plaintiff. *See, e.g.*, Kasper Decl. Ex. 83 (ECF No. 116-32) (email from MTU to Sawary confirming that after signing with MTU, Sawary would

9

immediately stop purchasing from plaintiff and only sell what was left in its stock); Second Stipulation of Facts ¶¶ 20–21 (ECF No. 119) (stipulated fact that MTU's agreement began before termination of Sawary's agreement with plaintiff); Kasper Decl. Ex. 72 (ECF No. 116-21) (email confirming an initial stock order with MTU prior to termination of Sawary's agreement with plaintiff); Nilles Decl. Ex. Q (ECF No. 106-3) (email from Kopietzki to MTU stating that Sawary's inventory was low, that it was "desperate to place another stock order," and that it would be forced to do so with plaintiff if the MTU agreement was not finalized soon).

Plaintiff also provides evidence that Kopietzki knew and encouraged Sawary to do these things despite knowing that it violated its agreement with plaintiff. *See, e.g.*, Kasper Decl. Ex. 6 at 223–25 (ECF No. 115-8) (Kopietzki deposition testimony stating that he convinced Sawary not to place additional orders with plaintiff despite knowing their agreement was still in effect); Kasper Decl. Ex. 33 (ECF No. 115-35) (email from Kopietzki to Sawary urging it not to place additional orders with plaintiff despite Sawary's inventory being very low); Kasper Decl. Ex. 8 (ECF No. 115-10) (email from Kopietzki to Sawary urging it to provide MTU quotes to customers while its agreement with plaintiff was still in effect). From these facts, a reasonable juror could infer that Kopietzki induced Sawary to breach its contract with plaintiff and that Kopietzki is not entitled to the privilege defense.

Finally, plaintiff argues that even if Kopietzki merely induced Sawary to terminate the agreement and not to breach it, he is still not entitled to the competition privilege defense because he acted wrongfully in inducing Sawary to terminate. "Wrongful" conduct is conduct that is independently actionable, *Acumed LLC v. Advanced Surgical*

*Servs., Inc.*, 561 F.3d 199, 215 (3d Cir. 2009) (interpreting Restatement (Second) of Torts § 768) (concluding that "wrongful" conduct is "conduct that was actionable on a basis independent of the interference claim"), and includes coercion, physical force, and fraudulent misrepresentation. *Liebe*, 98 Wis. 2d at 19 (citing Restatement (Second) of Torts § 768, cmt. e).

Plaintiff provides evidence to support the inference that Kopietzki acted wrongfully and is thus not entitled to the privilege defense. First, evidence supports the inference that Kopietzki breached the one-year post-termination non-compete provision of his employment contract with Kohler, which prohibited him from competing indirectly or directly with plaintiff until the end of April 2012. First Stipulated Facts ¶¶ 27, 28 (ECF No. 101). For example, Kopietzki was facilitating discussions with Sawary about finding a new generator supplier in May 2011. Kasper Decl. Exs. 15, 16 (ECF Nos. 115-17, 115-18) (emails in which Kopietzki arranges for his partner Patrick Lee to meet with Sawary to explore Sawary selling generators under a "private label"). Plaintiff also provides evidence to support the inference that Kopietzki was involved in MTU's attempts to secure a new generator distributor in Saudi Arabia before his non-compete was over. Kasper Decl. Ex. 18 (ECF No. 115-20) (September 2011 email from MTU to Kopietzki regarding "the Saudi project"); Kasper Decl. Ex. 19 (ECF No. 115-21) (November 2011 email from Kopietzki offering MTU "a good replacement" for its previous Saudi distributor); Kasper Decl. Ex. 22 (ECF No. 115-24) (December 2011 emails between Kopietzki and Lee jointly drafting the consulting agreement between PPS and MTU in which Kopietzki instructs Lee the agreement would be "better . . . coming from you . . . until my time in April is completed"). Taking all inferences in favor

11

of plaintiff, a reasonable juror could conclude from these facts that Kopietzki worked on the MTU-Sawary deal prior to April 2012 in breach of his contract and thus acted wrongfully.[6]

Further, there is a fact issue as to whether Kopietzki engaged in fraudulent misrepresentation during the Sawary-MTU negotiations. Plaintiff cites evidence which supports the inference that Kopietzki intentionally misrepresented his interests in the Sawary-MTU negotiations, misleading Sawary about the nature of his relationship with MTU by failing to disclose details about their consulting arrangement and falsely representing to Sawary that he had its interests at heart based on their longstanding relationship. *See, e.g.*, Kasper Decl. Ex. 66 (ECF No. 116-15) (email from Kopietzki to Sawary stating that he had Sawary's best interests at heart); Kasper Decl. Ex. 6 at 127 (ECF No. 115-8) (Kopietzki deposition testimony that he represented to Sawary that he was working with several "reputable companies" when in fact he was only working for MTU); *id.* at 196–97 (Kopietzki deposition testimony that he sent emails to Sawary without telling MTU to give the impression that he was working with Sawary when, in fact, he was working for MTU); Kasper Decl. Ex. 1 at 43 (ECF No. 115-1) (Kopietzki deposition testimony that he never told Sawary about his true relationship with MTU).

Further, plaintiff provides some evidence that Sawary relied on these misrepresentations in deciding to switch to MTU. The evidence suggests that Kopietzki's close personal relationship with Sawary was a large factor in its decision to

---

[6] Kopietzki argues that he did not breach his non-compete agreement because Sawary is a Saudi Arabian entity and his non-compete only prohibited him from working with competitors in North America, Europe, and North Africa. First Stipulation of Facts ¶¶ 27–28 (ECF No. 101). This argument fails because Kopietzki consulted for MTU Onsite Energy GmbH, a German competitor headquartered in Minnesota. First Stipulation of Facts ¶¶ 40, 65 (ECF No. 101); Second Stipulation of Facts ¶ 24 (ECF No. 119).

12

even consider switching to MTU. *See, e.g.*, Kasper Decl. Ex. 1 at 8 (ECF No. 115-1) (Kopietzki's deposition testimony detailing his personal relationship with the owner of Sawary); Kasper Decl. Ex. 6 at 206–07 (ECF No. 115-8) (Kopietzki deposition testimony that a Sawary representative asked for a meeting just with him and not MTU to address concerns); *id.* at 211 (Kopietzki deposition testimony that Sawary requested that he stay involved after the MTU agreement was signed); *id.* at 213 (Kopietzki deposition testimony that he needed to hold Sawary's hand and that he provided a "comfort zone" for them). The record further suggests that Kopietzki played on this close personal relationship to convince Sawary to switch to MTU. *See, e.g.*, Kasper Decl. Ex. 7 (ECF No. 115-9) (Kopietzki email to MTU stating "we need to keep this fish on the hook and I know how to do it"); Kasper Decl. Ex. 6 at 130–31 (ECF No. 115-8) (Kopietzki deposition testimony that he told MTU that if MTU "wanted to play in Saudi Arabia," he could convince Sawary to switch); *id.* at 193 (Kopietzki deposition testimony that he was advocating for and advising Sawary to switch to MTU). From this, a reasonable juror could conclude that Kopietzki fraudulently misrepresented his interests, falsely leading Sawary to believe that Kopietzki's advice was based on Sawary's interests when in fact it was not, and that Sawary, based on its past relationship with Kopietzki, relied on Kopietzki's misleading statements and advice. This would constitute fraudulent misrepresentation and thus wrongful conduct. *See Miles v. Mackle Bros.*, 73 Wis. 2d 84, 89 (1976) (defining the elements of a fraudulent misrepresentation claim as (1) a false representation (2) made for the purpose of inducing the other to act (3) on which the other relies).

Thus, there are fact questions about whether Kopietzki is entitled to the competition privilege defense. The same evidence plaintiff puts forward also creates fact issues as to whether Kopietzki intentionally interfered with the Sawary-Kohler contract and whether this interference was a "substantial factor" in causing plaintiff damages. This precludes summary judgment on this claim.

**C. Motions to Restrict**

The parties have also filed motions requesting that portions of certain documents be maintained under seal. The parties attest that such documents contain trade secret and other confidential information that would cause competitive harm if disclosed. *See Formax Inc. v. Alkar-Rapidpak-MP Equip., Inc.*, No. 11-cv-298, 2014 WL 792086 (E.D. Wis. Feb. 25, 2014). But it is not enough to simply say that disclosure would cause harm; a party must explain how disclosure would cause harm. *Id.* at *2 (citing *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 547 (7th Cir. 2002)). Here, the parties have failed to do so. They have made no attempt to show that the information at issue constitutes trade secrets, *Baxter*, 297 F.3d at 545 (requiring litigants to "analyze the applicable legal criteria" as to whether a document contains a protectable trade secret), and they have not shown how any of the documents, which discuss historical negotiations from 2011–2013, would cause them a competitive disadvantage if public. *Id.* at 548 (requiring litigants to "analyze in detail, document by document, the propriety of secrecy."). I also find many of the requests to seal to be entirely overbroad; for example, Kopietzki wishes to seal the entirety of the MTU representative's deposition rather than attempting to redact sensitive information. *See* Nilles Decl. Ex. B (ECF No. 106).

14

At a status conference in August 2014, I expressed to the parties the strong presumption that anything filed be publicly available and the importance of filing detailed motions to seal showing good cause going forward. The parties have again failed to do so, and because this time I have relied on the documents in deciding Kopietzki's summary judgment motion, they must be made publicly available rather than withdrawn.

### III. Conclusion

**THEREFORE, IT IS ORDERED** that defendant Kopietzki's motion for summary judgment (ECF No. 98) is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that the parties' motions to restrict (ECF Nos. 104, 110, and 122) are **DENIED**. The Clerk shall unseal the relevant documents.

**IT IS FURTHER ORDERED** that a telephone status conferences is scheduled for **March 23, 2016 at 11:15 AM** for the purpose of discussing mediation and trial schedule. Counsel should call 414/297-1285 to provide contact information.

Dated at Milwaukee, Wisconsin this 11th day of March, 2016.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge